**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STEFANIE L.,<br>*Plaintiff*,<br><br>v.<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:25-CV-628 (KAD)<br><br><br><br><br>August 14, 2026 |

**MEMORANDUM OF DECISION**
**RE: PLAINTIFF'S MOTION TO REVERSE AND REMAND (ECF No. 25) AND COMMISSIONER'S MOTION TO AFFIRM (ECF No. 29)**

Kari A. Dooley, United States District Judge:

Plaintiff Stefanie L. ("Plaintiff" or "Claimant") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). She appeals the decision of defendant, the Commissioner of the Social Security Administration (the "Administration"), denying her application for disability benefits pursuant to Title II of the Social Security Act (the "Act") and for supplemental security income pursuant to Title XVI of the Act. Plaintiff moves to reverse the Commissioner's decision on the basis that Plaintiff's residual functional capacity (RFC) determination was not supported by substantial evidence. Alternatively, she seeks a remand for further proceedings before the Commissioner. In response, the Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is based upon the correct application of legal standards, and thus should be affirmed. For the reasons set forth below, the Plaintiff's Motion to Reverse or Remand, ECF No. 25, is DENIED, and the Commissioner's Motion to Affirm, ECF No. 29, is GRANTED.

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations[1]; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform

[1] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

their past relevant work; and (5) if the claimant is unable to perform their past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 404.1520(a)(4)(i)–(v), 404.1509. The claimant bears the burden of proof with respect to Steps One through Four, and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated

simply, "if there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

**Facts and Procedural History**

On September 22, 2021, Plaintiff applied for disability insurance benefits[2] pursuant to Title II of the Act,[3] and supplemental security income (SSI)[4] pursuant to Title XVI,[5] alleging an onset of disability date of September 19, 2021. Her claim was initially denied on December 16, 2021, and upon reconsideration on March 17, 2022. Thereafter, a telephonic hearing was held before an Administrative Law Judge (ALJ) on November 14, 2022. On February 17, 2023, the ALJ issued a written decision denying both Plaintiff's applications for disability benefits and SSI. Plaintiff appealed that decision through the agency and then to this Court, on September 28, 2023. *See Lippe v. Comm'r of Soc. Sec.*, Dkt. No. 3:23-CV-1271 (SVN) (D. Conn.). The Court granted on consent Plaintiff's motion to remand and remanded the matter for further proceedings before the Commissioner on January 23, 2024. The ALJ held a second hearing on November 4, 2024. On December 23, 2024, the ALJ reached a partially favorable decision, finding Plaintiff disabled as of November 3, 2024, with respect to her Title XVI claim for supplemental security income benefits. With respect to Plaintiff's Title II claim for disability benefits, the ALJ concluded that Plaintiff's last date insured was March 31, 2024. As such, the ALJ concluded that, as to the disability claims, Plaintiff was not disabled through March 31, 2024.

In his decision, at Step One, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since her alleged disability onset date of September 19, 2021. At Step Two, the

---

[2] The regulations for disability and disability insurance are found at 20 C.F.R. § 404.900 *et seq.*

[3] 42 U.S.C. § 401 *et seq.*

[4] The regulations for supplemental security income are found at 20 C.F.R. § 416.1400 *et seq.*

[5] 42 U.S.C. § 1381 *et seq.*

ALJ determined that Plaintiff had severe impairments: specifically, cervical degenerative disc disease; bilateral carpal tunnel syndrome, status-post release; osteoarthritis; obesity; depression; anxiety; and post-traumatic stress disorder (PTSD). The ALJ also determined that Plaintiff had some minor or non-severe impairments, including ADHD, chronic obstructive pulmonary disease (COPD), asthma, restless leg syndrome, sleep apnea, and low back pain. At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations.[6] At Step Four, the ALJ found that the Plaintiff has the residual functional capacity (RFC) to perform light work[7] subject to the following limitations:

> [Plaintiff] can frequently climb ramps or stairs, but never climb ropes, ladders, or scaffolds; frequently balance, stoop, kneel, or crouch, but never crawl. She can frequently handle, reach, and finger with the left upper extremity, but only occasionally reach overhead with the left upper extremity. The claimant must avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, and poor ventilation, and avoid all unprotected heights. The claimant is able to perform simple instructions with no strict time or production requirements, such as conveyor-belt pace work or hourly quotas. She should not be required to work with the public or work collaboratively with co-workers, and she is able to tolerate only occasional interaction with co-workers and supervisors. She is able to tolerate and adapt to infrequent changes in the work routine.

Certified Social Security Trs. ("CAR"), ECF No. 22, at 1157. The ALJ further found that Plaintiff could not perform any past relevant work. At Step Five, the ALJ concluded that, before November 3, 2024, there were a significant number of jobs in the national economy that Plaintiff could perform, considering her age, education, work experience, and limitations in the RFC. Accordingly, the ALJ concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) prior

[6] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing qualifying impairments).

[7] Defined in 20 C.F.R. § 404.1567(b) as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . If someone can do light work, we determine that he or she can also do sedentary and light work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

to November 3, 2024. The decision found Plaintiff disabled as of November 3, 2024, however, primarily because on November 3, 2024, Plaintiff's age category changed to an "individual of advanced age" under 20 C.F.R. § 404.1563. The ALJ determined that as of November 3, 2024, "considering the claimant's age, education, and work experience, a finding of 'disabled' is reached by direct application of Medical-Vocational Rule 202.04." CAR at 1168. Plaintiff does not challenge this finding.

The Appeals Council did not assume jurisdiction of Plaintiff's case, *see* 20 C.F.R. § 404.984(d), and thus, this case is now ripe for federal court review.

**Discussion**

Plaintiff challenges the basis for the ALJ's findings regarding the limitations occasioned by her mental impairments as well as her physical limitations in the determination at Step Four—Plaintiff's RFC. She also asserts that the ALJ should have further developed the record before making the Step Four determination or adjudicating her claim.

A claimant's RFC is "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, an ALJ uses "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3); *see also Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (summary order) ("[T]he ALJ must weigh all the evidence to make a[n RFC] finding consistent with the record as a whole."). But it is the plaintiff's burden to provide evidence to establish any work-related limitations. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order).

When evaluating the weight of medical opinions, an ALJ is guided by the factors outlined in 20 C.F.R. § 404.1520c.[8] *See Rubin v. O'Malley*, 116 F.4th 145, 155 (2d Cir. 2024). The

[8] For claims filed prior to March 27, 2017, the Commissioner and ALJs apply the "treating physician rule," found in 20 C.F.R. § 404.1527. *See Schillo v. Kijakazi*, 31 F.4th 64, 71 & n.1 (2d Cir. 2022). However, because

regulation requires the ALJ to "consider and articulate 'how persuasive the SSA finds all of the medical opinions and all of the prior administrative medical findings in the claimant's case record.'" *Id.* (alterations omitted) (quoting 20 C.F.R. § 404.1520c(b)). If two or more medical opinions are equally well-supported by the record, then the ALJ "must articulate how []he considered other factors, including the source's relationship with the claimant or level of specialization, as to each medical opinion or administrative finding." *Id.* (citing 20 C.F.R. § 404.1520c(b)(3), (c)). "In evaluating the persuasiveness of a medical opinion, an ALJ must consider five central factors, the two 'most important factors' being supportability and consistency." *Villier ex rel. N.D.D.R. v. Comm'r of Soc. Sec.*, No. 23-893, 2024 WL 2174236, at *2 (2d Cir. May 15, 2024) (summary order). Supportability is the extent to which a medical source uses "objective medical evidence" to support their opinions. *See* 20 C.F.R. § 404.1520c(c)(1). Consistency, on the other hand, refers to how "consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources . . . ." *Id.* § 404.1520c(c)(2).

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (internal citations omitted); *see also Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009) ("[S]ocial security hearings are not (or at least are not meant to be) adversarial in nature."). "It is the Commissioner's affirmative responsibility to develop the record in such a way as to ensure a full and fair hearing." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 220 (S.D.N.Y. 2004). "When a record is incomplete, a decision based thereon is not supported by

---

Plaintiff's claim was filed after March 27, 2017, her claim is governed by the new regulations at 20 C.F.R. § 404.1520c. *See id.* at 71 n.1.

substantial evidence." *Beutel v. Berryhill*, No. 3:17-CV-1193 (SALM), 2018 WL 3218662, at *10 (D. Conn. July 2, 2018) (citing *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996)).

Indeed, the law is clear that "where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate. And when 'further findings would so plainly help to assure the proper disposition of [the] claim, . . . remand is particularly appropriate.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005) (quoting *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999)). Remand is also appropriate where the Court is "'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'" *Pratts*, 94 F.3d at 39 (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)). "However, the ALJ's duty to develop the record is not limitless." *Amanda P. v. Comm'r of Soc. Sec.*, 545 F. Supp. 3d 40, 47 (W.D.N.Y. 2021). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ." *Id.* (quoting *Rosa*, 168 F.3d at 79 n.5).

***Mental Limitations***

As to the Plaintiff's mental impairments, Plaintiff argues the ALJ did not fully account for the agency consultants' assessments as to how she can interact with supervisors (Dr. Fadakar) and whether she can handle detailed or complex tasks (Dr. Swanson). In response, the Commissioner argues that the ALJ properly evaluated Plaintiff's RFC by considering all of the proffered medical opinions, and thus, substantial evidence supports the ALJ's RFC assessment. The Court agrees with the Commissioner.

Plaintiff argues that the ALJ erred in finding that Plaintiff could interact on an "occasional" basis with supervisors, when Dr. Fadakar (who the ALJ found persuasive), found that she could

relate to supervisors on a "superficial" basis. Pl.'s Memo, ECF No. 25-2, at 14. The ALJ did not explain why he did not include the "superficial" restriction in her RFC, and Plaintiff argues that the meaning of "occasional" (relating to frequency) is significantly different from "superficial" (the quality of the interaction). *Id.* An ALJ is not required to conform to any specific medical opinion in forming the RFC. *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). Furthermore, the ALJ acknowledged in this case that although he credited the findings of Dr. Fadakar and Dr. Swanson, he "made only minor modifications based on the overall record or for clarity," including finding a "further reduction to no work with the general public." CAR at 1165.

"There is a divergence of opinion as to whether a limitation to brief and superficial interaction[s] with others is the functional equivalent of a limitation to occasional contact." *Michael G. v. Comm'r of Soc. Sec.*, No. 1:24-CV-767, 2024 WL 3616282, at *5 (W.D.N.Y. July 31, 2024) (quotations and alterations omitted). Some courts in this Circuit have adopted Plaintiff's interpretation that the terms are not equivalent, whereas other courts have found that an ALJ has the discretion to impose a limitation in the RFC for "occasional" interactions when a medical opinion proscribes "superficial" contact. *See id.* (collecting cases). Although there are certainly "colorable arguments" on both sides, the Court finds the analysis of the *Michael G.* court compelling on this point: mainly, that in reviewing an ALJ's decision, the Court does not review the record *de novo*, and in affording the ALJ considerable deference in his decision, an ALJ "may rationally conclude that 'brief and superficial' contact and 'occasional' contact are functionally equivalent." *See id.* And indeed, it appears that the ALJ here made additional adjustments in tailoring Plaintiff's mental RFC, finding that that she is able to perform "simple instructions with no strict time or production requirements," and that she should "not be required to work with the public or work collaboratively with co-workers." CAR at 1157. Taking the record as a whole, the

ALJ's conclusion that Plaintiff was able to tolerate "occasional" interactions with supervisors is supported by substantial evidence.

Plaintiff next observes that the RFC accepted Dr. Swanson's finding that Plaintiff "may struggle with sustaining adequate [concentration, persistence, and pace] for detailed or complex tasks," *id.* at 152, by including a restriction for only "simple instructions with no strict time or production requirements." *Id.* at 1157. However, Plaintiff argues that this finding is irreconcilable with the ALJ's acceptance of the vocational expert's (VE) testimony that Plaintiff would be able to perform work as a marker, routing clerk, and mail clerk, which are classified as GED Reasoning Levels 2 and 3. Thus, Plaintiff argues, the ALJ's "available jobs" finding is not supported by substantial evidence. In response, the Commissioner argues that jobs with a Reasoning Level 2 are consistent with an RFC restriction to "simple instructions," and that even excluding the mail clerk position (at Reasoning Level 3), there remain sufficient numbers of jobs for markers and routing clerks to support the ALJ's finding. Again, the Court agrees with the Commissioner.

The Second Circuit held in *Lockwood v. Commissioner of Social Security Administration*, 914 F.3d 87 (2d Cir. 2019), that an ALJ is required to "inquire into all those areas where the [vocational] expert's testimony seems to conflict with the *Dictionary* [*of Occupational Titles*]." 914 F.3d at 92 (emphases omitted). That is, an ALJ has an affirmative duty to "obtain a reasonable explanation for any apparent—even if non-obvious—conflict between the Dictionary and a vocational expert's testimony," in order to "elicit an explanation that would justify crediting the testimony." *See id.* (cleaned up). The Second Circuit has also held that Reasoning Level 3 appears to conflict with a limitation to simple or unskilled work.[9] *See Gibbons v. Comm'r of Soc. Sec.*,

[9] In contrast, many courts have found that Reasoning Level 2 does not necessarily conflict with a limitation for "simple work" or "simple instructions." *See Chaffin v. Colvin*, 999 F. Supp. 2d 468, 475 (W.D.N.Y. 2014) (collecting cases). Plaintiff cites no authority to the contrary.

No. 22-2730, 2023 WL 3830774, at *2 (2d Cir. June 6, 2023) (summary order). Thus, there does appear to be a conflict between the *Dictionary* and the VE's testimony regarding jobs which Plaintiff could perform.

However, here, the ALJ *did* inquire into the VE's testimony and its potential conflicts with the *Dictionary*. At the hearing on November 4, 2024, the ALJ asked whether the VE's job recommendations were consistent with both the *Dictionary* and the limitations in Plaintiff's RFC. CAR at 1206. The VE acknowledged the differences between the *Dictionary*'s definitions and the limitations in the RFC. *See id.* ("The DOT does not separate ramps and stairs with ladders, ropes, and scaffolds. Does not give us the frequency in which interaction occurs with supervisors, co-workers, and the public. It does not give us the mental limitations under the RFC."). The VE then indicated that "with regards to all of those areas, my testimony was based on my education, and professional experience as a certified rehabilitator counselor, as well as my analysis of the . . . job tasks associated with the occupations I've provided, according to the DOT." *Id.* Plaintiff's counsel had the opportunity to cross-examine the VE during the hearing, and he did so. *See id.* at 1207–09. Further, the ALJ acknowledged the VE's admitted inconsistencies in his decision and finding that "there is a reasonable explanation for the inconsistencies." *Id.* at 1167. The ALJ clearly fulfilled his obligations under *Lockwood* to independently inquire into conflicts between the VE's testimony and the *Dictionary*, and he adequately explained his reasoning for adopting the VE's testimony despite those inconsistencies.[10]

Plaintiff next argues that the ALJ failed to develop the record as it relates to the opinion of the Commissioner's psychological consultant, Darlene Shelton, Ph.D., to whom Plaintiff was

[10] The Court also agrees with the Commissioner that, to the extent it was erroneous for the ALJ to include the job of mail clerk in the RFC, it was harmless error: even excluding the mail clerk position, the VE's testimony identifying 165,000 marker jobs and 122,000 routing clerk jobs would still support the ALJ's "not disabled" determination.

referred for a psychological examination. In his opinion, the ALJ notes that "[w]hile I credit the findings of the psychological consultant, Darlene Shelton, Ph.D., I note that she did not include mental limitations in vocationally relevant terms." *Id.* at 1165. Plaintiff argues that this statement demonstrates that the ALJ applied an improper standard for evaluating Dr. Shelton's opinion and that he should have further developed the record by asking for clarification from Dr. Shelton before deciding to "credit" the opinion.[11] Plaintiff is correct that a medical opinion does not have to be presented in a particular form or use talismanic language to be considered or relied upon by an ALJ. *See Bown v. Comm'r of Soc. Sec.*, No. 19-CV-4935 (KNF), 2020 WL 3914851, at *6 (S.D.N.Y. June 23, 2020). But her argument is premised on too narrow a reading, and arguably an incorrect reading, of the ALJ's findings with regards to Dr. Shelton. The ALJ did not "reject" Dr. Shelton's opinion because it was not expressed in a "vocationally relevant" form. In fact, as Plaintiff acknowledges, he expressly credited her findings. But the ALJ also expressed some concerns with it, because, *inter alia*, her opinion was "based upon the claimant's reports rather than objective medical evidence and her clinical findings." CAR at 1165–66. The ALJ also recognized that although Plaintiff was critical of Dr. Shelton, Dr. Shelton *personally examined* Plaintiff for 90 minutes. Dr. Shelton's report bears this out. In addition to taking an extensive personal history from Plaintiff, she administered several mental status evaluation assessments. *Id.* at 718. The ALJ's explanation, combined with the entirety of the voluminous record on Plaintiff's mental limitations (including records from multiple treating physicians and consultants) is not so lacking as to warrant remand to the Commissioner in order to obtain clarification from Dr. Shelton.

[11] Plaintiff's argument regarding Dr. Shelton is confusing. On the one hand, she argues that clarification should have been sought before the opinion was credited, a term Plaintiff purports not to understand. Pl.'s Memo, ECF No. 25-2, at 20. On the other hand, she criticizes the ALJ for "rejecting the opinion," *id.*, which the ALJ clearly did not do. Under either argument, no clarification was required.

***Physical Limitations***

As to Plaintiff's physical impairments, Plaintiff argues that the ALJ did not adequately explain why he restricted overhead reaching only to her left arm and erroneously concluded that Plaintiff did not require the use of a cane. She asserts that the restriction as to overhead reaching should have been as to both arms and that the RFC should have reflected her need for a cane. The Commissioner argues that the ALJ's RFC as to these issues was supported by substantial evidence. The Court agrees with the Commissioner.

First, with regards to a bilateral overreaching restriction, the ALJ found persuasive the opinions of State agency medical consultants Glen Gade, M.D., and Michael Greenberg, M.D., who restricted Plaintiff to light work with some "additional postural, manipulative, and environmental limitations," including restrictions to her left arm. *See id.* at 1163. The ALJ did not find persuasive Nurse Mohamed Hussain's opinion for more restrictive range restrictions because, *inter alia*, these restrictions did not align with the Plaintiff's own reports about her daily living activities, as well as the overall medical record. *See id.* at 1162 ("The x-rays and MRIs of the claimant's spine show only moderately severe degenerative changes and normal signal identity."); *id.* ("While Nurse Hussain assessed bilateral manipulative limitations, the record fails to establish any severe impairment of the right upper extremity or spinal radiculopathy that could support such limitations."). Plaintiff relies on the opinion of Dr. Henry Scovern, a third State agency medical consultant, who recommended an occasional bilateral overhead reaching restriction. However, although the ALJ did not address Dr. Scovern's opinion specifically, he did address the question of a bilateral restriction in depth. *See id.*; *id.* at 1159–61. The ALJ did not credit Nurse Hussain's recommendation for a bilateral reaching restriction because "the record fails to establish any severe impairment of the right upper extremity," as compared to her left upper

extremity. *Id.* at 1162. Indeed, record evidence cited by the ALJ consistently noted problems with Plaintiff's left arm and hand, but not her right hand. *See, e.g.*, *id.* at 1159 ("An examination showed reduced strength of the left upper extremity but normal strength of the right upper extremity . . . ."); *id.* ("An EMG of the claimant's upper extremity performed on March 1, 2021, revealed findings consistent with moderate left carpal tunnel syndrome, but no evidence of radiculopathy or ulnar neuropathy."); *id.* ("[Claimant] complained of numbness and tingling of the left hand and fingers . . . .").

Further, Plaintiff has not shown that the bilateral reaching restriction would have impacted the VE's testimony and recommendation. The VE testified that the three jobs he provided would not, in his opinion, require any more than "occasional" overhead reaching, for both left and right upper extremities. *Id.* at 1205–06. This is precisely the limitation included in the RFC with respect to Plaintiff's left arm. Thus, even if the ALJ had imposed the same restriction on a bilateral basis, it would not have changed the VE's testimony. In light of this in-depth consideration by the ALJ, Plaintiff has not demonstrated that the outcome would have been different if the ALJ had explicitly considered Dr. Scovern's opinion. *See Aponte v. Kijakazi*, 692 F. Supp. 3d 257, 267 (S.D.N.Y. 2023).

Second, with regards to the use of a cane, the Commissioner is correct that substantial evidence supported the ALJ's finding that Plaintiff did not need the use of a cane restriction in the RFC. Plaintiff testified that she used a prescribed cane 3–4 times per week when outside of the home. CAR at 1155. However, the ALJ did not find a cane restriction appropriate because of the lack of support in the medical record for her using a cane so frequently. For instance, multiple medical records over several years did not mention the use of a cane or assistive device, even when one might expect a cane to be used. *See, e.g.*, *id.* ("During a recent visit for ankle swelling in May

2024, the provider did not observe the claimant using an assistance device."). The only mention of a cane in the record other than Plaintiff's testimony was from June 2023, prescribing a cane "only to utilize intermittently, for short periods of time, during her exacerbations of pain." *Id.* While an ALJ is required to consider the claimant's reports of pain or other limitations, he is "not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "The ALJ has discretion to 'arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of pain alleged by the claimant.'" *Borelli v. Berryhill*, No. 3:18-CV-801 (VLB), 2019 WL 4233586, at *15 (D. Conn. Sept. 6, 2019) (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). The same can be said of the extent and impact of Plaintiff's walking limitations. And Plaintiff does not identify any record which would so undermine the ALJ's conclusion as to render it unsupported by substantial evidence.

On appeal, it is not the role of the Court to review the record *de novo*. *See generally Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (holding that the Court may reject the Commissioner's findings "only if a reasonable factfinder would have to conclude otherwise" (quotation and emphasis omitted)). Indeed, the Court's assessment on review is "so deferential that there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). Accordingly, the Court finds that the ALJ's formulation of Plaintiff's RFC is supported by substantial evidence.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion to Reverse or Remand (ECF No. 25) is DENIED, and the Commissioner's Motion to Affirm (ECF No. 29) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of the Commissioner and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of August, 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE